IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT LEWIS BOWMAN, JR.,  )
                           )
         Plaintiff,        )
                           )
              v.           )    Case No. CIV-20-222-RAW-SPS
                           )
KILOLO KIJAKAZI,           )
Acting Commissioner of the Social )
Security Administration, [1]   )
                           )
         Defendant.        )

## REPORT AND RECOMMENDATION

The claimant Robert Lewis Bowman, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant is engaged in substantial gainful activity, or his impairment is not medically severe, disability benefits are denied. If he does have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant can perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 31, 170). He graduated high school and took EMS classes, and has previously worked as an EMT paramedic, firefighter, teller, and repossessor (Tr. 16, 192). The claimant alleges that he has been unable to work since April 9, 2018, due to lumbar scoliosis; degenerative disc disease; arthritis in the back, both shoulders, both hands, and both knees; and contractures in both arms and both hands (Tr. 191).

### Procedural History

On April 9, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 24, 2019 (Tr. 11-18). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was further limited to occasional

reaching in front and to the side, but no full extension reaching, and only occasional overhead reaching, all bilaterally. Additionally, he limited the claimant to occasional grasping and fingering bilaterally, found that the claimant should not be required to do any commercial driving, and further found that he must be allowed to alternately sit and stand every ten to fifteen minutes throughout the workday for the purpose of brief postural change, but without leaving the workstation (Tr. 14). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, counter clerk and rental clerk (Tr. 18).

## Review

The claimant's rather scattershot brief appears to contend that the ALJ erred by: (i) failing to properly evaluating the only medical opinion in the record and further failing to order a consultative exam as to his physical impairments, (ii) failing to properly assess his impairments with regard to Listings 1.02 and 1.04 at step three, (iii) failing to properly formulate his RFC and to account for his pain and obesity, (iv) failing to perform a proper consistency evaluation, and (v) failing to identify jobs that exist in significant numbers. The undersigned Magistrate Judge agrees the ALJ erred in evaluating the evidence at step four, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of arthritis, degenerative disc disease, degenerative joint disease, and finger contractures, as well as the nonsevere impairments of osteoarthritis, scoliosis, obesity, lumbar radiculopathy,

cervicalgia, neck and back pain, essential hypertension, high cholesterol, gout, and hip pain (Tr. 13). The relevant medical records reveal that the claimant's back pain and contractures causing weakness of hand grip and fingers was considered a chronic problem as far back as 2012, well before his alleged onset date of April 9, 2018 (Tr. 317). Treatment records after the alleged onset date indicate that the claimant continued to have joint stiffness and swollen joints, as well as arthralgias and back pain (Tr., *e. g.*, 410, 477). More specifically, Physician Assistant Albert McLemore noted that the claimant had normal range of motion of all major muscle groups, but that he had pain with range of motion, 4/5 L forearm pronators and forearm supinators and 3/5 R finger adductors and abductors, and 3/5 R thumb opposition, as well as ulnar deviation bilaterally at MCP joints (Tr. 460). An April 10, 2019 x-ray of the claimant's next and back confirmed degenerative joint/disc disease and showed abnormal DJD at C6-7 with narrowing (Tr. 520).

On June 25, 2018, PA McLemore completed a Medical Source Statement (MSS) as to the claimant's ability to do physical work-related activities (Tr. 469-472). In it, PA McLemore indicated that the claimant could lift/carry ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, that he must periodically alternate sitting and standing to relieve pain or discomfort, and that he is limited in pushing/pulling in his upper extremities (Tr. 469-470). In support, PA McLemore cited the claimant's congenital defect affecting both hands, which causes decreased strength, with 4/5 strength in the upper and lower arms, and 3/5 hand strength bilaterally. Furthermore, the claimant was unable to lift greater than ten to twenty pounds because of his decreased grip. Additionally, PA McLemore stated that the claimant's

degenerative disc disease in his lumbar spine causes pain with prolonged standing and walking (Tr. 470).  Additionally, PA McLemore indicated that the claimant could never climb ladders/ropes/scaffolds, and only occasionally balance or kneel, and that he was unable to crouch, crawl, or stoop due to his degenerative disc disease in this back (Tr. 470). He again indicated the claimant had limited reaching ability, and could only occasionally reach, handle, and finger, although he could frequently feel (Tr. 471).  Finally, PA McLemore noted that changes in weather affected the claimant's pain in his lumbar spine (Tr. 472).

An August 7, 2018 MRI of the lumbar spine revealed that the claimant had, *inter alia*:  (i) at L1/2, a 4 mm paracentral bulger, spinal canal patent 16 mm, mild and perhaps moderate right foraminal narrowing with facet and endplate encroachment; (ii) at L5/S1, 4 mm endplate bulge and remodeling, spinal canal patent 14 mm, moderate bulky left greater than right facet hypertrophy, mild to moderate right foraminal narrowing with endplate encroachment, mild left foraminal narrowing with endplate encroachment; (iii) 28 degrees levocurvature lumbar spine; (iv) disc desiccation at all lumbar levels; (v) moderate to severe disc narrowing L1-L2 with reactive endplate changes (Tr. 475).

On August 24, 2018, an x-ray of both hands revealed findings compatible with inflammatory arthritide involving both hands, resulting in ulnar subluxation of the metacarpophalangal joints of the fingers, and abnormal flexed appearance of the finger PIP joints. Additionally, the left hand index and long fingers suggest cortical irregularity near the bases of the respective middle phalanges, which could represent early erosions, but this was not seen due to the positioning of the bones for the exam (Tr. 481).

The claimant also received treatment for his bilateral shoulder pain and arm weakness. MRIs of both shoulders revealed a high grade partial tear of the rotator cuff on the right shoulder and a full thickness rotator cuff tear on the left shoulder (Tr. 483-486, 495). At a November 11, 2018 visit with Dr. David J. De la Garza, the claimant was recommended for surgery on his left shoulder and given an injection in his right shoulder (Tr. 495-496). The claimant then underwent a left shoulder arthroscopy with subacromial decompression on the left shoulder on December 5, 2018 (Tr. 500). Treatment notes from PA McLemore in January 2019 indicate the claimant still complained of diffuse joint aches and that he was positive for arthralgias, back pain (chronic), joint stiffness, and myalgias, as well as weakness (Tr. 509). By May 2019, the claimant had good full motion and rotator cuff strength in the left shoulder, but was still sore, and he was given another injection in his right shoulder (Tr. 528).

A state agency physician initially determined that the claimant could perform light work with no additional limitations (Tr. 80-81). Upon review, a second state agency physician affirmed this opinion (Tr. 94-95).

At the administrative hearing, the claimant testified that the contractures in his hands affected his grip strength (Tr. 49). He stated that he could pick a pen up, although he might sometimes drop it once he had picked it up (Tr. 50). He further testified that he uses a cane full time now (Tr. 52). As to driving, he testified that he felt safe driving from his house to town, which is about two miles, but that he has his wife drive distances longer than that (Tr. 54-55).

In his written opinion, the ALJ summarized the claimant's testimony and the

medical record as to his severe impairments at step four, but made no mention of his nonsevere impairments (Tr. 14-16).  He noted the claimant's degenerative disc disease, as well as shoulder impingements and hand deformities, particularly noting the claimant's left shoulder surgery (Tr. 15).  Additionally, he noted the claimant's 3/5 finger strength, but contrasted that with the claimant's ability to make sandwiches, drive, and do light household work (Tr. 15).  The ALJ agreed that the claimant had reaching, handling, and lifting restrictions, and found he could perform the lifting requirements of light work (Tr. 16).  The ALJ noted the claimant's testimony included an estimate that he could only lift up to fifteen pounds but stated that it was just an estimate and made his own estimate/assumption that the claimant could lift up to twenty pounds occasionally (Tr. 16).  The ALJ limited the claimant to occasional grasping/fingering bilaterally, but found he was unable to do commercial driving because it requires constant grasping (Tr. 16).  He then assigned partial weight to the opinions of the state reviewing positions, noting that they had not included reaching or manipulative limitations, which were supported by the longitudinal record (Tr. 16).  He then stated that he found PA McLeMore's MSS to be unpersuasive because the findings that the claimant would have postural, attention/concentration, temperature, and hazard limitations were not consistent with the longitudinal evidence in the record (Tr. 16).  In support, the ALJ cited to one treatment record dated a full year prior to the alleged onset date where the claimant had a normal range of motion despite leg swelling (Tr. 16, 450).

    For disability insurance benefits claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c.  Under these rules, the ALJ does

not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical

-9-

sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In this case, the only opinion in the record as to the claimant's functional abilities came from PA McLemore. Here, the ALJ did not even summarize it, but simply rejected it by stating it was unpersuasive because the opinion was unsupported and inconsistent with one treatment record *pre-dating the alleged onset date*. It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

The claimant also asserts that the ALJ failed to account for his obesity. The record reflects that the claimant's weight ranged from 255 to 275 pounds during the relevant time period (Tr., *e. g.*, 503, 508, 518, 532, 534). This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant has *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the

ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* to consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.* Here, the ALJ ignored any evidence in the record as to the claimant's obesity, much less *how* the claimant's obesity and co-existing impairments actually affected the RFC. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") (*citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7). *Cf. DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately

limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p.") (*citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6).

The claimant likewise contends that the ALJ erred in failing to order a consultative examination related to his physical impairments, and the undersigned Magistrate finds that the ALJ should give serious consideration to this on remand. While acknowledging the ALJ's broad latitude in deciding whether to order consultative examination, the undersigned Magistrate Judge notes here that the record in this case is sparse with regard to actual functional examining evaluations of the claimant's physical impairments. *See Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.") (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). The ALJ's discretion here is not boundless, and under the circumstances in this case, the ALJ likely should further developed the record.

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he

is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**